549 P.2d 786 (1976)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Robert D. HAINES, Defendant-Appellant (two cases).
Nos. 75-063, 75-414.
Colorado Court of Appeals, Div. II.
February 5, 1976.
Rehearing Denied March 11, 1976.
Certiorari Denied May 10, 1976.
*788 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, John R. Rodman, David K. Rees, Asst. Attys. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Public Defender, Forrest W. Lewis, Deputy Public Defender, Denver, for defendant-appellant.
Selected for Official Publication.
ENOCH, Judge.
Two appeals by Robert D. Haines have been consolidated in this opinion. In case No. 75-063, defendant appeals from a judgment of the trial court that he was sane at the time of the commission of the alleged crime; in case No. 75-414, defendant appeals from a judgment entered on a jury verdict finding him guilty of first degree murder. We affirm No. 75-063, reverse No. 75-414, and remand for a new trial on the murder charge.
The defendant was charged with the first degree murder of his wife and entered a plea of not guilty by reason of insanity. The case went to trial on the sanity issue and resulted in a deadlocked jury. A mistrial was declared and, upon retrial, by stipulation of the parties, the case was submitted to the court on the record. The court found the defendant was sane at the time of the commission of the offense.
At defendant's trial on the murder charge, the following facts were elicited. Defendant and Mrs. Haines resided in an apartment above Mrs. Haines' place of employment. On the evening of January 5, 1974, after Mrs. Haines finished working, she and the defendant remained in the lounge where she was employed, drinking until 2 a.m. They were last seen together walking up the stairs to their apartment, hand in hand. At 11 a.m., January 6, 1974, Mrs. Haines' employer went upstairs to see why she was late for work, and discovered her body in the apartment's kitchen. She had been stabbed in the throat with a large butcher knife and had died from exsanguination. Defendant was in the apartment, in an intoxicated state. He could remember little about the incident except that sometime during the night he had found his wife dead on the floor. Mr. Haines was a chronic alcoholic, and both defendant and Mrs. Haines had been drinking heavily prior to her death. Mr. Haines was arrested at the scene and charges of first degree murder were subsequently filed.

Case No. 75-063Sanity Trial

Defendant alleges that the People failed as a matter of law to prove that he was sane at the time of the commission of the alleged offense. He argues that since substantial evidence of insanity was introduced by defendant, the People failed to meet their burden of proof.
At the sanity trial, a psychiatrist testified for the prosecution that defendant suffered from a personality disorder, but that he was legally sane at the time of the alleged crime. Two psychiatrists testified for the defense that defendant suffered from organic brain syndrome, caused and accentuated by defendant's alcoholism.
*789 One psychiatrist testified that the organic brain syndrome plus the ingestion of alcohol created a toxic psychosis which rendered defendant insane at the time of the commission of the crime. The second psychiatrist who testified for the defense had examined defendant and observed him for two weeks several months prior to the crime, and he testified that even if defendant had not had any alcohol on the night of the crime, defendant was legally insane at that time because of the organic brain syndrome.
Although the prosecution must prove sanity beyond a reasonable doubt, People ex rel. Juhan v. District Court, 165 Colo. 253, 439 P.2d 741, where the evidence is in dispute, sanity is a question for the finder of fact. Gomez v. District Court In and For Adams County, 179 Colo. 299, 500 P.2d 134. In this case the major conflicts in testimony were between expert witnesses; however, the weight to be accorded to opinions of an expert is also strictly a matter for the finder of fact. People v. Lowe, 184 Colo. 182, 519 P.2d 344. Therefore, since there is evidence in the record to support the finding that defendant was sane, and the evidence of the two defense psychiatrists contained inconsistencies, we cannot say as a matter of law that the People failed to prove defendant sane beyond a reasonable doubt.

Case No. 75-414Murder Trial

Defendant alleges that he was denied his constitutional and statutory right to a speedy trial, and that since the crime involved was classified as "capital," the trial court erred in refusing to grant him 15 peremptory challenges.
Defendant argues that under § 18-1-405, C.R.S. 1973, he was entitled to be brought to trial on the murder charge within six months from the date "upon which [his last] continuance was granted."[1] The record indicates that defendant was tried on the murder charge eight months after that date; he was, however, tried on the sanity issue within six months from that date.
A sanity trial is a trial on the merits in that it is a trial on the mental element of the offense alleged which is an essential element of guilt. Parks v. Denver District Court, 180 Colo. 202, 503 P.2d 1029. Since § 18-1-405, C.R.S. 1973, states that the defendant must be brought to trial "on the issues raised by the complaint, information, or indictment," we hold that when the defendant pleads "not guilty by reason of insanity" and is thus entitled to a separate trial on the sanity issue, he must be brought to trial on that issue within six months from the date of entry of the plea or defendant's last continuance under § 18-1-405(3), C.R.S. 1973. Once the sanity trial is ended and the defendant is found to be sane, he must then be brought to trial on the other issues of the crime charged within the statutory six months from the judgment in the sanity trial. In this case, defendant was tried on the sanity issue within the period allowed by the statute, and was then tried on the other elements of the first degree murder charge within six months of the finding that defendant was sane; therefore no violation of § 18-1-405, C.R.S. 1973, occurred.
Although we hold that defendant's statutory right to a speedy trial was not violated, we must still determine whether his constitutional right was abridged. See Potter v. District Court, Colo., 525 P.2d 429. A determination of this issue involves an ad hoc judgment on the particular facts of each case. Following the case of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, we must consider the *790 length of the delay, the reason for the delay, defendant's assertion or demand for a speedy trial, and any prejudice to the defendant.
Here, the length of delay from defendant's last continuance until the trial where defendant was convicted of first degree murder was eight months; the reason for the delay was in part the defendant's requested continuance, which resulted in a delay of four of those months. Also during this eight month time period, there was the sanity retrial and the determination by the court of this issue. The record indicates that defendant did not file a motion asserting his right to a speedy trial until March 25, and the trial on the murder charge commenced on April 7. Whatever prejudice may have occurred to defendant by his incarceration, we do not find to be sufficient in and of itself to constitute a violation of his rights. Under all these circumstances, there was no infringement of defendant's constitutional right to a speedy trial.
Defendant next alleges that the trial court erred in refusing to grant him 15 peremptory challenges. He cites § 16-10-104, C.R.S. 1973, which provides that "in capital cases, the state and the defendant, when there is one defendant, shall be entitled to fifteen peremptory challenges.
. . ." He argues that the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, merely abolished the death penalty in "capital" cases, and did not undermine the classification of a crime as "captial" for other purposes.
There is a split of authority in jurisdictions which have considered the effect of Furman on the procedural aspects of a "capital" case. Some jurisdictions have adopted the penalty theory, determining that since Furman abolished the death penalty, in capital cases, it also abolished the procedural guarantees connected with a "capital" case. See People v. Watkins, 17 Ill.App.3d 574, 308 N.E.2d 180; U. S. v. Freeman, 380 F.Supp. 1004 (D.N.D.); Martin v. State of Indiana, Ind., 314 N.E. 2d 60. Other states have determined that although Furman abolished the penalty in a capital case, it did not repeal constitutional provisions and statutes which provide procedures for "capital" cases since the term refers to a classification of crimes. See State v. Holmes, 263 La. 686, 269 So.2d 207; U. S. v. Watson, 496 F.2d 1125 (4th Cir.); State v. James, 30 Utah 2d 32, 512 P.2d 1031.
Colorado adopted the classification theory in People ex rel. Dunbar v. District Court, 179 Colo. 304, 500 P.2d 358. In that case the court held that despite Furman v. Georgia, supra, bail could be denied in a capital case, stating: "Our constitution has defined a class of crimes which permit the denial of bail. Murder is within that class of crimes." Since Colorado has adopted the classification theory, we hold that the procedural aspects of a capital case, as established by the Colorado Constitution or Colorado statutes, remain in effect for crimes which have previously been classified as capital. Therefore the defendant, as well as the People, was entitled to 15 peremptory challenges in this case.
The denial of the right of a party to use all of his peremptory challenges creates a jury which is not a statutory tribunal and therefore constitutes reversible error. Harris v. People, 113 Colo. 511, 160 P.2d 372. Here, both the defendant and the state used all 10 peremptory challenges granted by the trial court. We therefore hold that since the defendant was denied his statutory peremptory challenges, the case must be reversed and remanded for a new trial on the murder charge.
Since this case must be remanded for a new trial, we will deal with two of the defendant's other contentions of error. In the trial testimony of the arresting officer, *791 he stated four different times that the defendant refused to respond to certain questions during the post-arrest interrogation about the death of his wife. Although these statements by the officer appear to have been inadvertent, and the prosecution did not stress them in closing argument, such statements may be an improper reference to the defendant's right to remain silent under the Fifth Amendment. See Griffin v. California, 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed.2d 106. Therefore, reference to defendant's refusal to respond to questions should be avoided in the new trial.
Defendant alleges that the instruction given to the jury on intoxication was confusing and an incorrect statement of the law. The instruction stated that if the jury found beyond a reasonable doubt that defendant caused the death of another person but that defendant was so intoxicated at that time as to be incapable of premeditation, defendant would be guilty of murder in the second degree. We agree with defendant that this instruction was confusing and improper. The instruction should have indicated that if the jury found that the defendant was sufficiently intoxicated to be incapable of premeditation it should find the defendant not guilty of first degree murder. See People v. Loger, Colo., 535 P.2d 210. Although we need not reach the issue of whether the instruction constituted reversible error, we note that since the instruction might well give rise to confusion in the minds of the jury, a different instruction on intoxication should be utilized when the case is retried.
Judgment entered in Case No. 75-063 finding defendant sane is affirmed. Judgment entered in Case No. 75-414 is reversed and cause remanded for a trial on the charge of first degree murder.
RULAND and STERNBERG, JJ., concur.
NOTES
[1] We perceive a question of interpretation of this section as to whether the six months begins to run from the date the continuance is granted or from the date to which it is granted. However, since the parties did not argue this issue and we are able to resolve the issues of this case on other grounds, we leave this issue to later judicial determination.