**The PEOPLE of the State of Colorado, Petitioner,**

v.

**David ARLEDGE, Respondent.**

**No. 96SC131.**

Supreme Court of Colorado, En Banc.

May 19, 1997.

Robert S. Grant, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, for Petitioner.

Barbara S. Blackman, Denver, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari [1] to review the judgment of the court of appeals which affirmed the district court's dismissal of the charge against the defendant David Arledge (Ar-

---

1. The following issues were accepted for certiorari review: (1) Whether the court of appeals erred in failing to find that the defense request for disqualification of the judge constituted either affirmative conduct manifesting consent for a continuance chargeable to the defense under section 18–1–405(3), or at least, a delay at the instance of the defendant which tolled the running of the speedy trial period pursuant to section 18–1–405(6)(f) and (h), because that action necessarily involved a delay for the purpose of reassigning and resetting the case before another court; and (2) Whether the defense through its own conduct can engineer a speedy trial violation, when neither the court nor the prosecution has delayed proceedings, without triggering either the provisions of section 18–1–405(3) or section 18–1–405(6)(f) and (h), 8B C.R.S. (1986 & 1996 Supp.).

ledge) pursuant to the speedy trial provisions of section 18–1–405, 8B C.R.S. (1986 & 1996 Supp.).[2] Five weeks prior to trial, the court denied Arledge's recusal motion. Then, one business day before trial, the court granted the recusal motion and requested and obtained from Arledge a speedy trial waiver. Thirty-three days still remained in the speedy trial period, and Arledge was not brought to trial within that time.

After the original speedy trial period had run, defense counsel filed a motion with the reassigned judge to dismiss the case because his client had not been brought to trial within six months of his not guilty plea. The reassigned judge agreed and entered a dismissal order which was upheld by the court of appeals. We affirm the judgment of dismissal.

### I.

Arledge was charged by information with accessory to first degree murder, a class four felony, see § 18–8–105(1) & (2), 8B C.R.S. (1986),[3] for allegedly assisting James Richard Bastin in transporting and burning the body of Mayra Lopez after Bastin had murdered her. Bastin and Arledge were scheduled to be tried separately but with the same trial judge presiding. On May 3, 1994, Arledge entered a plea of not guilty. Pretrial confer-

ence was set for September 30, 1994, and a jury trial for October 3, 1994.

On August 25, 1994, defense counsel learned of an April 1994 television broadcast that aired an interview with the trial judge during jury deliberations in the Mayra Lopez murder trial. On August 26, 1994, at a previously scheduled motions hearing, the defense filed a "Motion to Disqualify Judge," supported by two affidavits executed by attorneys representing Arledge, stating their opinions that the judge's television comment created "an appearance that the defendant will not receive a fair trial." Arguing the motion, counsel for Arledge said, "I have to stress that the issue is not whether [bias or prejudice is] actual. The issue is whether there's an appearance and that's it." [4] The alleged appearance of bias was based on the combination of the April 21, 1994 broadcast and two previous broadcasts that occurred in October 1993 and earlier in April of 1994, which alluded to defendant's knowledge of the murder. The two previous broadcasts did not involve any comment by the trial judge.

In denying the recusal motion, the trial judge stated:

I suppose [I] would have to have a verbatim transcript of what was stated, but I

**2.** Although both the federal and Colorado constitutions provide protections to ensure a citizen's right to a speedy trial, U.S. Const. amend. VI and XIV; Colo. Const. art. II, § 16, this case is based upon the Colorado statutory provisions for speedy trial, § 18–1–405, and our analysis is confined to the statute. In addition, Crim P. 48(b) provides speedy trial protections which are subject to the same analysis as section 18–1–405. *See People v. District Court,* 933 P.2d 583, 587 (Colo.1997).

**3.** The information stated that Arledge "did knowingly, feloniously and unlawfully render assistance to James Richard Bastin by providing transportation, by concealing, destroying and altering any physical evidence that might aid in the discovery, detection, apprehension, prosecution, conviction or punishment of the said principal respondent."

**4.** The transcript of the television news broadcast attached to the motion for disqualification read as follows:

AN ADAMS COUNTY JURY HAS REACHED A DECISION ON TWO CHARGES ... BUT

THEY'RE AT AN IMPASSE ON A THIRD IN THE MURDER TRIAL OF AN 18–YEAR–OLD, SO THERE'S NO ANNOUNCEMENT.

DELIBERATIONS CONTINUE TOMORROW.

—STILL—

THE BODY OF 12–YEAR–OLD MAYRA LOPEZ WAS FOUND IN A BURNING DUMPSTER IN 1992.

JAMES BASTIN IS ACCUSED OF RAPING AND MURDERING HER.

—VO NATS VTR—

TODAY THE JUDGE IN THE CASE TALKED WITH [THE NEWS REPORTER].

[THE TRIAL JUDGE] BLASTED SEVERAL YOUNG PEOPLE HE SAYS, SHOULD HAVE COME FORWARD WITH WHAT THEY KNEW ABOUT THE MURDER.

—SOT VTR—

"What can I say beyond inexcusbale. [sic] Their conduct is as reprehensible as anyone in this case."

....

WE DON'T KNOW WHICH CHARGE THE JURORS ARE STRUGGLING WITH.

TOMORROW WILL BE THE THIRD DAY OF DELIBERATIONS.

don't believe that this Court made any comments regarding Mr. Arledge. Nor do I believe that the statements made by this Court, or allegedly made by this Court, express any opinion as to the guilt or innocence of Mr. Arledge as it relates to the charge of being an accessory to the crime of murder. . . .

I don't believe that there is anything in the motion to recuse which indicates that I have expressed any opinion as to Mr. Arledge regarding any of those issues. And because of that, at this point in time, I'm going to deny the motion to recuse because I believe on the four corners of the motion fails. [sic] Certainly, if and when you obtain a hard copy of [the total interview] and if the comments seem to indicate otherwise, this Court would be more than happy to revisit that issue.

[DEFENSE COUNSEL]: Judge, with that ruling, I have been informed by [the news station] that they can have a copy of the interview to us by Monday. And what I would ask the court for [is] a continuance until Monday to supplement this motion. And in the alternative, for a stay to perhaps file a Rule 21.

THE COURT: Well, you mean to continue all motions hearing?

[DEFENSE COUNSEL]: Yes.

THE COURT: No, I can't do that and won't do that. I'm denying the motion at this point in time. I recognize your right to refile this or to supplement this Monday. . . . [W]e simply don't have the time to do that. . . .

The trial court, in denying the recusal motion, provided for Arledge to refile or supplement the motion with additional materials by the following Monday, if he desired reconsideration. However, Arledge took no action to comply with the deadline set by the court for reconsideration.

Five weeks later, on September 30, 1994, the pretrial hearing convened one business day before the scheduled October 3, 1994 trial. At the pretrial hearing, defense counsel requested permission to deposit the videotapes of the television news interview with the court. However, counsel told the court that the tapes contained no new evidence.

The court then engaged Arledge and his counsel in the following colloquy, reopening the recusal motion which had been denied:

[DEFENSE COUNSEL]: First of all I had promised the Court on the last court date that I would deposit with the Court the videotapes from [the news station], and I'd like to mark them and give them to the Court. I've talked to the district attorney.

*I apologize for not giving these to the Court earlier, but it doesn't say anything. We didn't think it was going [to] say anything, I mean, that we talked about in court, and so I just wanted to deposit these because these are the actual videotapes as opposed to the transcripts of the tape that we had last time.*

THE COURT: *Okay. Well, this dealt with the issue of disqualification of this judge and I don't know if you're still requesting that that happen or not.*

[DEFENSE COUNSEL]: Well, yes, Judge, we are continuing with our request [to disqualify the judge] and I had talked to the district attorney about it and told him. I didn't make copies of this, but that he could—

THE COURT: *If you're still making that request, then as far as I'm concerned, I don't have any particular desire to hear this case.*

[DEFENSE COUNSEL]: *Okay. Judge, I would just like to make it for the record, that's all.*

THE COURT: You understand of course that, Mr. Arledge, if you do ask this Court to disqualify itself, it is going to require a delay in these proceedings because we will not be able to have a judge hear this matter next Monday, and therefore, if in fact this Court does disqualify itself, you would be giving up, at least to some extent, your right to a speedy trial, and any delays that may occur between now and the date of the trial, the new trial date, would be attributable to you and would be excluded from the speedy trial calculations.

MR. ARLEDGE: (Defendant nods head up and down.)

[DEFENSE COUNSEL]: Judge, can I discuss this with him?

THE COURT: Yes, you may. And I say that because the last time we were in here you indicated to me that you were not proceeding on that. You're kind of catching me by surprise and I wish this had happened earlier. We'll pass on this matter so you can discuss it with your client as to what he wishes to do.

I wish I would have known this yesterday because I spent until about midnight last night working on questionnaires and such and I'm a bit peeved, but I don't care if I disqualify myself from this case. I have a lot of other things I prefer to do.

[DEFENSE COUNSEL]: Judge, I never withdrew.

THE COURT: That's okay. Back there.

(Whereupon, court recessed at 9:36 a.m. and reconvened at 9:55 a.m. in open court with all parties present.)

. . . .

[DEFENSE COUNSEL]: . . . [I]t's our position that neither 18–1–405 or Rule 21, which talks about the substitution of judges, construes a substitution of judges as a waiver of speedy trial.

I don't believe that it's an appropriate choice for my client to make between his right to a speedy trial and his right to request a substitution of judge, but since we're left with that choice, he is willing to waive speedy trial in order to maintain his request for a substitution of judge.

*. . . I'd like to mark the two videotapes to support the record.*

THE COURT: I don't even think it's necessary since I'm granting the motion. You can argue, if you want. I'm granting the motion.

Okay. Mr. Arledge, you understand that by waiving your right to a speedy trial, normally you would have a right to be brought to trial within six months of your arraignment date, six months of any continuance that you would request. In fact, if you waive your right to a speedy trial, then you would not have to be brought to trial within six months of today's date, do you understand that?

MR. ARLEDGE: Yes, sir.

THE COURT: Okay. Is that what you wish to do?

MR. ARLEDGE: Yes, sir.

THE COURT: All right. If you'll have him execute the written waiver of speedy trial. What we'll do is simply refer the case to the chief judge for reassignment. . . .

(Emphasis added.) Defendant then executed the requested speedy trial waiver.

On October 5, 1994, the chief judge reassigned the case. On October 7, 1994, a proceeding was held before another judge to reset the trial date for the reassigned judge. At the conclusion of the resetting proceeding, defense counsel objected to the trial being calendared beyond the speedy trial period.

The original speedy trial period expired on November 3, 1994. On November 21, 1994, defense counsel filed a "Motion to Dismiss: Violation of Speedy Trial," to be heard by the judge to whom the case had been reassigned. The motion to dismiss alleged that the original trial judge had "forced the waiver by making the defendant choose between an unbiased judge and a speedy trial," and that "[o]nce the trial court acceded that sufficient grounds existed to recuse itself the court was without the authority or jurisdiction to require the defendant to waive any statutory or constitutional right."

The dismissal motion was heard by the reassigned judge on December 16, 1994. Defense counsel argued that "there's [no] case that says that you can make a defendant choose between his right to a fair trial and a right to a speedy trial." Defense counsel further asserted that, "once the court indicates there's grounds for recusal, the court has no power to do anything in the case, [including] ask for a waiver of speedy trial." The court agreed with defense counsel that a waiver requested after a judge grants a recusal motion is invalid, and dismissed the charge against Arledge.

The court of appeals treated the granting of the motion for substitution as a delayed ruling on the August 26, 1994 recusal motion,

because the trial court "granted the motion without viewing [the videotapes]," and the ruling was "based on the exact same information that had been before the court when it first denied the motion on August 26, 1994." *People v. Arledge*, No. 95CA0097, slip op. at 4–5 (Colo.App. Dec. 28, 1995) (not selected for official publication). The court of appeals also agreed that the original trial judge did not have jurisdiction to require or accept Arledge's waiver of speedy trial after stating his intent to recuse himself.

## II.

We conclude that no delay was chargeable to Arledge and the charge was properly dismissed for a speedy trial violation.

### A.

#### Speedy Trial Requirements

Colorado's speedy trial statute requires dismissal if the defendant is not brought to trial within six months of the date a not guilty plea is entered, unless the delay falls into one of the exclusion categories set forth by statute. *See* § 18–1–405(1);[5] *see also People v. Deason*, 670 P.2d 792, 796 (Colo. 1983); *People v. Bell*, 669 P.2d 1381, 1383 (Colo.1983). Section 18–1–405 prevents unnecessary delays caused by the prosecution or the court. *See People v. Runningbear*, 753 P.2d 764, 767 (Colo.1988). "The trial court and prosecution have the burden of insuring compliance with section 18–1–405." *Id.* at 766.

"When considering a motion to dismiss for failure to afford a speedy trial, the trial court

must view each case individually. After considering all of the facts, it must determine whether the defendant's right to a speedy trial has been denied." *People v. Colantonio*, 196 Colo. 242, 244, 583 P.2d 919, 921 (1978). The speedy trial provisions should not be applied in a "wooden or mechanistic fashion," and the "countervailing interest in effective enforcement of criminal laws" must be considered. *People v. Sanchez*, 649 P.2d 1049, 1052 (Colo.1982). To whom the trial delay beyond the speedy trial date is properly chargeable is an "*ad hoc* inquiry." *People v. Scales*, 763 P.2d 1045, 1048 (Colo.1988).

■ Under circumstances where no statutory exception or constitutional right justifies a delay, and the defendant has taken no action to effectuate or consent to a delay, noncompliance with the speedy trial requirements results in dismissal of the charges against the defendant.[6]

■ A dilatory ruling by the trial court also may cause a delay chargeable to the court. In *People v. Boos*, 199 Colo. 15, 18–19, 604 P.2d 272, 274 (1979), the defendant called to the court's attention that a conflict of interest existed and requested appointment of another attorney. In not ruling on the request until five weeks later, the court caused the delay. *Id.* at 18–19, 604 P.2d at 274.

Likewise, dismissal of charges may result when the prosecution engages in a "last minute ploy to circumvent the requirements of the speedy trial provisions," where untimely charges against the defendant were added on the day of trial, causing a delay. *Hampton*

---

5. Section 18–1–405(1) provides:
   Except as otherwise provided in this section, if a defendant is not brought to trial on the issues raised by the complaint, information, or indictment within six months from the date of the entry of a plea of not guilty, he shall be discharged from custody if he has not been admitted to bail, and ... the pending charges shall be dismissed....

6. For example, where the defendant takes no action to impede the prosecution's ability to secure her presence at trial, delays resulting from lack of diligence are chargeable to the prosecution. *See People v. Byrne*, 762 P.2d 674, 677 (Colo.1988). Delays caused by the court's decision to conduct a hearing or its congested docket

when the hearing date arrived are chargeable to the court. *See People v. Bell*, 669 P.2d 1381, 1386 (Colo.1983). Delays may be chargeable to the court where the People moved for a continuance and the trial court refused to set trial within the six-month period, *see Tasset v. Yeager*, 195 Colo. 190, 192, 576 P.2d 558, 560 (1978), and the defendant is not chargeable where the trial court failed to specify a new venue in a timely manner, *see People v. Colantonio*, 196 Colo. at 244, 583 P.2d at 921. Dismissal of charges against the defendant may be required where the trial date was set outside the prescribed period because a co-defendant's trial has been set on the same date. *See People v. Mueller*, 851 P.2d 211, 214 (Colo.App.1992).

*v. District Court*, 199 Colo. 104, 107–08, 605 P.2d 54, 57 (1980).

Both the public's interest in the effective enforcement of criminal laws and the liberty interest of the accused are forwarded by Colorado's speedy trial statute. Thus, the prosecution and the defendant have standing to compel enforcement of speedy trial requirements. In *People v. District Court*, 933 P.2d 583, 592 (Colo.1997), defense counsel withdrew because of an ethical conflict with another case involving the defendant's brother, but the trial court did not attempt "to find other conflict-free counsel who might have been able to meet the deadline," *id.*, and the defendant did not agree to the delay, *see id.* at 591. Instead, the trial court set a trial date beyond the speedy trial period. The prosecution brought an original proceeding to compel the trial court to set a trial date within the speedy trial period because the delay and resultant dismissal of the charges would have been assignable to the court. *Id.* at 592. We agreed that the trial court must accede to the prosecution's request for a speedy trial date. *Id.*

A defendant, however, may act expressly or by necessary implication to effectuate or consent to a delay in the trial, with the result that the delay is chargeable to the defendant. Section 18–1–405(6)(f) provides that the period of any delay caused at the instance of the defendant is excluded in computing the time within which a defendant must be brought to trial. In *People v. Runningbear*, 753 P.2d at 768, we stated:

> An accused should not be able to use a motion for severance to "run time off" the speedy trial clock and defeat compliance with the speedy trial statute. The right to a speedy trial . . . cannot be used to prevent an accused from being tried when the delay in issue was the sole product of a defendant's motion. . . .

(Citation omitted.) A defendant should not profit from a delay for which he or she is responsible, *see People v. Fleming*, 900 P.2d 19, 20 (Colo.1995), and active participation by the defendant in such delay constitutes waiver, *see id.* at 23–24.

Any express consent to the delay or other affirmative conduct by the defendant causing delay is normally treated as a waiver of the right to speedy trial. "In this sense, similar to waivers of other rights, the waiver of the right to a speedy trial can be inferred from the behavior of the defendant." *People v. District Court*, 933 P.2d 583, 588 (Colo.1997) (footnote omitted).

### B.

### *The Trial Judge's Recusal in This Case and Defendant's Right to Speedy Trial*

In considering whether the court of appeals and the district court were correct in dismissing the charge for violation of speedy trial requirements, we must determine whether Arledge actively participated in causing a delay or effectuated a continuance that should be charged to him, *see Fleming*, 900 P.2d at 20, 23–24, and whether the trial judge validly requested Arledge to waive his speedy trial right after the judge recused himself. Arledge was not brought to trial within the six-month speedy trial period that commenced on May 3, 1994, and expired on November 3, 1994. We conclude that the recusal motion was brought and denied in a timely manner. The disqualification issue was later reopened by the trial judge, who recused himself. The judge could not then require a speedy trial waiver. Under these circumstances, no delay was chargeable to Arledge.

A recusal motion must be brought as soon as defendant becomes aware of a basis for making such a motion, and the judge must enter a timely order disqualifying himself or herself if the motion and affidavits allege facts that support disqualification. *See* Crim. P. 21(b)(1) & (3); *see also* § 16–6–201, 8A C.R.S. (1986); *Comiskey v. District Court*, 926 P.2d 539, 542 (Colo.1996). In responding to a motion for recusal, a judge may: (1) deny the motion if the grounds stated in the motion and affidavit are legally insufficient; (2) grant the motion pursuant to the procedures prescribed by Crim. P. 21; or (3) agree to disqualification to avoid the appearance of impropriety even through suffi-

cient legal grounds have not been alleged. *See Aaberg v. District Court,* 136 Colo. 525, 527, 319 P.2d 491, 493 (1957).

Unless it could be reasonably inferred from the facts alleged in the motion and supporting affidavits that the judge has a bias or prejudice that will in all probability prevent him or her from dealing fairly with a party, the judge should preside over the case. *See Wilkerson v. District Court,* 925 P.2d 1373, 1376 (Colo.1996). Colorado Code of Judicial Conduct, Canon 3(C)(1) requires that a judge disqualify himself or herself if the judge's impartiality might reasonably be questioned. *See also* Crim. P. 21(b)(2). When a trial judge is recused, he or she loses jurisdiction over subsequent rulings requiring the exercise of judicial discretion. *See Beckord v. District Court,* 698 P.2d 1323, 1330 (Colo.1985).

In this case, when defense counsel learned of the television interview on August 25, 1994, he promptly filed a recusal motion which the trial judge denied the next day. Whether the motion was properly denied is moot because the court subsequently reconsidered and granted the motion on September 30, 1994. Since he disqualified himself, we must conclude that the trial judge believed that a basis for disqualification existed; otherwise, he had a duty to serve at the scheduled October 3, 1994 trial. *See Wilkerson,* 925 P.2d at 1376.

The prosecution argues that the defense "engineered" raising the substitution motion again on the eve of trial and any resultant delay is chargeable to the defendant. The record demonstrates the contrary. When defense counsel asked leave at the pretrial hearing to lodge the videotapes of the television interview for the record, the trial judge reopened the substitution matter by asking defense counsel whether Arledge was continuing with "the issue of disqualification of this judge." In response, counsel stated, "Well, yes, Judge, we are continuing with our request." Had counsel stated otherwise, the issue of disqualification might have been viewed as abandoned if Arledge were convicted and appealed the conviction. *See People v. MacCallum,* 925 P.2d 758, 759 n. 1 (Colo. 1996). The judge then said that he did not

have "any particular desire to hear this case," if disqualification were still an issue. Counsel objected to his client having to choose between "his right to request a substitution of judge" and "his right to a speedy trial," but stated that Arledge was "willing to waive speedy trial in order to maintain his request for a substitution of judge."

Hence, this case does not involve a defendant who renewed or brought a motion for disqualification on the eve of trial. Rather, the trial judge instituted reconsideration of the recusal issue. The judge sought a speedy trial waiver from Arledge instead of promptly dispatching the case to the chief judge for reassignment to another judge for trial within the thirty-three days which remained in the speedy trial period.

We agree with the court of appeals and the district court judge to whom the case was ultimately reassigned that the trial delay was not chargeable to Arledge. The original trial judge improperly required the speedy trial waiver. Counsel objected to his client having to execute a speedy trial waiver in connection with the judge's recusal. Counsel continued to insist on trial within the speedy trial period. At the October 7, 1994 resetting proceeding, with twenty-seven days remaining in the speedy trial period, Arledge objected to the waiver and the tendered calendar date for speedy trial purposes:

> [DEFENSE COUNSEL]: Judge, just one last thing and I—this was already taken up in front of [the trial judge]. We executed a waiver of speedy trial last Friday and at that time we objected to having to execute that. In any event, in order to preserve the issue, we have to object to the—although it's clear on our calendars—we're objecting to the calendar date for purposes of speedy trial.

*See* § 18–1–405(5.1). Although this objection was lodged at the conclusion of the resetting proceeding, both the court and the prosecution were on notice of Arledge's adherence to maintaining the speedy trial request, yet Arledge was not brought to trial within the speedy trial period.

No effort was made by the trial judge or the judge who reset the trial to ascertain

whether a judge was available to try the case by November 3, 1994. The prosecution did not exercise its right to insist on a calendar date within the speedy trial period. *See People v. District Court,* 933 P.2d at 587. If no judge were available in the district, a request could have been made to the chief justice for reassignment to a senior judge to try the case. *See* Crim. P. 21(b)(3). This did not occur. Under these circumstances, the state did not discharge its burden of compliance with section 18–1–405. *See Runningbear,* 753 P.2d at 766.

## III.

Accordingly, we affirm the judgment of the court of appeals upholding dismissal of the charge against Arledge.