The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Daloyd T. REYNOLDS, Defendant–Appellant.

No. 04CA1053.

Colorado Court of Appeals, Div. I.

Sept. 7, 2006.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Lisa A. Polansky, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Daloyd T. Reynolds, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree burglary, second degree kidnapping, false imprisonment, aggravated robbery with an armed confederate, conspiracy to commit first degree burglary, and conspiracy to commit aggravated robbery. We reverse and remand for a new trial.

Four armed men entered a home, forced the occupants to the basement, bound some of them with duct tape, struck one woman with a hammer, and took her money. The woman later identified defendant as one of her attackers.

Over defendant's objection, his case was consolidated with that of two of the other men involved in the incident. At the conclusion of the prosecution's case, the trial court granted defendant's motion for a judgment of acquittal on the first degree kidnapping charges, but, over defense objection, ruled that the jury would be instructed on second degree kidnapping. The court also granted a severance and a mistrial as to one of the codefendants, but ordered that the trial would proceed against the two remaining defendants.

Defendant subsequently testified that he had given money and duct tape to another man so that the man could purchase and package marijuana at the house. He denied entering the house himself or knowing anything about the events taking place inside.

## I.

■ Defendant contends the charges against him should have been dismissed because he was not brought to trial within the statutory speedy trial period and did not waive this statutory right. We disagree.

Colorado's speedy trial statute requires the dismissal of criminal charges if the defendant is not brought to trial within six months of the date a not guilty plea is entered, unless the delay falls into one of the exclusion categories set forth by statute. *People v. Arledge,* 938 P.2d 160 (Colo.1997); *see* § 18–1–405(1), C.R.S.2005.

One such exclusion is set forth in § 18–1–405(6)(c), C.R.S.2005, which states:

> In computing the time within which a defendant shall be brought to trial as provided in subsection (1) of this section, the following periods of time shall be excluded:
>
> . . .
>
> (c) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance.

*See People v. Backus,* 952 P.2d 846 (Colo. App.1998) (under § 18–1–405(6)(c), where codefendant's motion for continuance resulted in trial setting beyond expiration of defendant's original speedy trial period and trial court found good cause for not granting severance, there was no violation of defendant's speedy trial rights).

Defendant was arraigned on August 15, 2003. In an order entered October 1, 2003, the trial court granted the prosecution's motion to consolidate the cases against three of the men involved in the incident that gave rise to the charges. The court found that the cases were "joinable under Crim. P. 8" because they arose out of a single criminal episode in which all the defendants allegedly participated; that severance was not mandatory because the prosecution had agreed not to introduce statements made by two of the defendants in the joint trial; and that, upon consideration of the factors set forth in *Peltz v. People,* 728 P.2d 1271 (Colo.1986), there was no basis for granting discretionary severance. In regard to the *Peltz* factors, the court found that neither the number of defendants nor the complexity of the issues was apt to confuse the jury; that any "marginal prejudice" from the admission of evidence could be cured by admonitory instructions; and that defendant had not identified any specific antagonistic defenses.

Following the consolidation, at a hearing on October 24, 2003, counsel for one of the codefendants stated that he had filed a motion for a continuance of the trial date. The court attempted to reset the trial before defendant's speedy trial period ran on February 16, 2004. During the ensuing discussion, the court noted that it could not set the trial during the court's "term week" in early January. Because no other date before February 16 was acceptable to the codefendants' counsel, trial was set to begin March 1, 2004.

Defendant's retained counsel had withdrawn at the time of the October 24, 2003, hearing, and defendant appeared at that hearing without an attorney. He subsequently obtained new counsel, who, on February 12, 2004, filed an objection to the March 1 trial date and demanded that defendant be brought to trial on or before February 16, 2004.

The trial court denied the motion after hearing argument and reviewing the transcript of the October 24 hearing. It concluded that the judge who had presided at the October 24 hearing had implicitly determined that good cause existed for not granting the severance. The court added that it also "specifically finds that it would appear, based on [the first judge's] previous findings, that there was a good cause for not granting the severance, that the delay was reasonable, and that the delay is encompassed and envisioned by [§ 18–1–405(6)(c) ]." It therefore denied defendant's motion to dismiss.

We find no error in the court's ruling. The two-week period of delay was unquestionably reasonable, and defendant does not dispute that his case was "joined for trial with a codefendant as to whom the time for trial [had] not run." Section 18–1–405(6)(c). Although defendant argues that the third requirement of § 18–1–405(6)(c)—namely, a finding that "there is good cause for not

granting a severance"—was not met, the record belies that contention. As noted above, the judge who presided at the October 24 hearing had, in his previous written order, gone through the factors governing mandatory and discretionary severance and had found that, under those factors, a severance was unwarranted; additionally, the second judge again found that there "was a good cause for not granting the severance." Although defendant argues that the second judge was required to reassess the severance issue, the record establishes that defendant had not, as of the February speedy trial hearing, articulated any additional grounds for severance that would have called into question the first judge's ruling on that issue.

Because the requirements of § 18–1–405(6)(c) were met, the two-week delay caused by the consolidation was excluded from defendant's six-month speedy trial period. Defendant was not required to "waive" his speedy trial rights in order for the statutory exclusion to apply. Furthermore, the trial court's reference to its unavailability during one week in January does not require the conclusion that setting the trial beyond defendant's original speedy trial period was "caused by the court's congested docket," as defendant contends, and it does not render § 18–1–405(6)(c) inapplicable.

Thus, defendant was not entitled to dismissal of the charges based on a violation of his statutory speedy trial rights.

## II.

■ Defendant contends reversal is required because he was denied the right afforded under Crim. P. 24(d)(1) to additional peremptory jury challenges in cases where a class one felony is charged. We agree.

## A.

Defendant was charged with two counts of first degree kidnapping, both of which alleged that the named victim had suffered bodily injury. Although the charged offenses were class one felonies, the death penalty was statutorily unavailable because the victims were liberated alive. See § 18–3–301(2), C.R.S.2005 ("Whoever commits first degree kidnapping is guilty of a class 1 felony if the person kidnapped shall have suffered bodily injury; but no person convicted of first degree kidnapping shall suffer the death penalty if the person kidnapped was liberated alive prior to the conviction of the kidnapper.").

Before voir dire began, the trial court and counsel discussed the number of peremptory challenges that each side could exercise. Defendant's counsel took the position that, under Crim. P. 24, the defendants would be entitled to sixteen peremptory challenges, ten for the first defendant and three for each of the other two defendants. The court responded: "Plus one for each alternate, yes. That's correct."

However, at the conclusion of voir dire, the court told defense counsel that their eleventh peremptory challenge was their last one. After the jurors had been sworn in, defendant's counsel argued, out of the presence of the jury, that the defendants should have been granted additional peremptory challenges under Crim. P. 24(d)(1) because class one felonies were charged. Counsel pointed out that the court appeared to have agreed with that position when the issue was raised prior to voir dire. The court disagreed, stating that it had been "the rule since the dawn of time" that an increased number of peremptory challenges was available only in class-one-felony murder cases. However, the court invited counsel to provide authority on the issue and indicated, "If I change my mind, we'll pick another jury."

The following day, after hearing argument and reviewing the parties' authorities, the court concluded that the statute addressing peremptory challenges, § 16–10–104, C.R.S. 2005, had been interpreted as inapplicable to first degree kidnapping and that, to the extent there was a conflict between that statute and Crim. P. 24(d), the statute prevailed over the rule. Accordingly, the court denied defendant's motion for a mistrial.

## B.

■ The function of peremptory challenges in a criminal proceeding is to allow both the prosecution and the defense to secure a more fair and impartial jury by en-

abling them to remove jurors whom they perceive as biased, even if the jurors are not subject to a challenge for cause. *People v. Lefebre*, 5 P.3d 295 (Colo.2000).

The right to peremptory challenges is not a constitutional right but, rather, a matter of state law. However, a defendant's due process rights are violated if he or she does not receive that which state law provides. *People v. Lefebre, supra; see Harris v. People*, 113 Colo. 511, 520, 160 P.2d 372, 377 (1945) (any frustration of party's absolute right to use all peremptory challenges granted by statute "constitutes reversible error, because the jury so forced upon the litigant is not a statutory tribunal"); *People v. Haines*, 37 Colo.App. 302, 549 P.2d 786 (1976) (failure to grant defendant the number of peremptory challenges allowed in capital cases required reversal), *overruled on other grounds by People v. Deason*, 670 P.2d 792 (Colo.1983); *cf. United States v. Martinez–Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000)(no due process violation where defendant received all peremptory challenges to which he was entitled under Fed.R.Crim.P. 24, but chose to use one of them to remove a juror who should have been excused for cause); *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (where defendant received the full complement of nine peremptory challenges provided under state law, his due process rights were not violated when he had to use those challenges to cure erroneous denials of challenges for cause).

Section 16–10–104, which addresses peremptory challenges, states, in relevant part:

(1) In capital cases, the state and the defendant, when there is one defendant, shall each be entitled to ten peremptory challenges. In all other cases, where there is one defendant and the punishment may be by imprisonment in the correctional facilities operated by the department of corrections, the state and the defendant shall each be entitled to five peremptory challenges, and in all other cases to three peremptory challenges. If there is more than one defendant, each side shall be entitled to an additional three peremptory challenges for every defendant after the first in capital cases, but not exceeding twenty peremptory challenges to each side . . . .

(2) Peremptory challenges shall be exercised as provided by applicable rule of criminal procedure.

The term "capital cases" is not defined in § 16–10–104 or elsewhere in the criminal code. However, case law has defined "capital case" to mean a case in which a sentence of death is potentially available under the statutes applicable to the offense, regardless of the constitutional availability of the death penalty. *See Tribe v. District Court*, 197 Colo. 433, 593 P.2d 1369 (1979) (first degree murder prosecution was a "capital case" for purposes of Crim. P. 24(f), mandating jury sequestration in capital cases, even though death penalty could not constitutionally be imposed); *see also People ex rel. Dunbar v. District Court*, 179 Colo. 304, 500 P.2d 358 (1972)(first degree murder is a capital offense for which bail may be denied even if death penalty is not constitutionally available); *People v. Haines, supra* (reversible error to deny additional peremptory challenges to defendant charged with murder, even though death penalty had been abolished, because murder was crime that would have previously been classified as capital).

Consistent with that definition, the supreme court and a division of this court have held that the § 16–10–104 requirement of additional peremptory challenges in "capital cases" is inapplicable to first degree kidnapping cases where the victim had been liberated alive and the death penalty was thus statutorily unavailable. *See People v. Hines*, 194 Colo. 284, 572 P.2d 467 (1977)(because death penalty was not a possibility where first degree kidnapping victim was liberated alive, trial court correctly declined to allow additional peremptory challenges available under § 16–10–104 in capital cases); *People v. Gonzales*, 631 P.2d 1170 (Colo.App. 1981)(same); *see also Tribe, supra*, 197 Colo. at 435, 593 P.2d at 1371 (distinguishing *Hines* on basis that first degree kidnapping statute applicable in *Hines* "itself provided that no death penalty could be administered under the facts alleged in the charge").

The rule of criminal procedure corresponding to § 16–10–104 is Crim. P. 24(d). Crim. P. 24(d)(2) is essentially identical to § 16–10–104(1), quoted above. However, the rule contains a provision not found in the statute. Crim. P. 24(d)(1) states: "For purposes of Rule 24 a capital case is a case in which a class 1 felony is charged." It was this provision on which defendant relied at trial in arguing that he was entitled to the additional peremptory challenges available in capital cases.

Subsection (1) was added to Crim. P. 24(d) by the supreme court in 1983, effective January 1, 1984—that is, some years after the decisions in *Hines* and *Gonzales, supra.* We have been unable to locate any source that would shed light on the reasons for adding the subsection. The People suggest that the purpose of the amendment was to clarify the meaning of the term "capital cases" following issuance of several decisions calling into question the constitutionality of the death penalty, and that use of the term "class 1 felony"—which, then as now, includes first degree kidnapping in which the victim suffered bodily injury but was not killed—was a "simple oversight."

We conclude that neither we nor the trial court may decline to give effect to the plain language of this supreme court rule on a theory that the language was the result of oversight. To so presume would seem particularly inappropriate here, in that the language was added not long after *Hines* and *Gonzales,* of which the court was necessarily aware, had construed "capital case" as not including all class one felonies. Additionally, giving effect to the language of Crim. P. 24(d)(1) does not produce an absurd result, in that persons charged with class one felonies face a minimum presumptive sentence of life imprisonment even if they are not subject to the death penalty. *See* § 18–1.3–401(1)(a), C.R.S.2005; *People v. Turley,* 18 P.3d 802, 805 (Colo.App.2000)(rejecting equal protection challenge by habitual offender to § 16–10–104(1) and Crim. P. 24(d), and recognizing that "class 1 felonies are plainly the most serious of offenses, and the General Assembly could rationally perceive that additional procedural protections for such defendants are warranted"). To the extent that use of the term "class 1 felony" in the amendment was in fact the result of oversight, rectifying the oversight is for the supreme court.

We further conclude that we may not ignore the language of the rule by applying the principle that, where a statute and a rule addressing a substantive matter conflict, the statute prevails. *See People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978)(if statute governing procedural matters in criminal case conflicts with supreme court rule, the rule controls; but if both address substantive matters, statute prevails over conflicting rule). That principle has been applied to statutes that conflict with Crim. P. 24. *See People v. Montoya,* 942 P.2d 1287, 1295 (Colo.App.1996) (§ 16–10–105, C.R.S.2005, which precluded replacement of a regular juror with an alternate during deliberations, addressed the substantive right to a fair trial by jury; thus, it should have been applied, rather than the "facially contradictory" provision of Crim. P. 24(e), which permitted such practice); *People v. Hollis,* 670 P.2d 441 (Colo.App.1983) (§ 16–10–104 addressed defendant's substantive right to an impartial jury; therefore, trial court properly afforded defendant five peremptory challenges in accordance with statute, rather than the ten challenges available under the then applicable version of Crim. P. 24(d) ).

It could be argued that, contrary to *Hollis,* the number of peremptory challenges afforded in a criminal case is in fact a matter of procedure, in which the rule rather than the statute controls. *See People v. McKenna, supra* (characterization as procedural or substantive may vary depending on application of rule or statute to facts of a particular case). However, we do not decide that issue here, because we conclude that, as to the question before us, the rule and the statute do not "conflict" in the sense of being irreconcilable or necessarily incompatible with each other. *See Webster's Third New International Dictionary* 477 (1976).

In *People v. Hollis, supra,* the rule explicitly provided for ten peremptory challenges, and the statute, for five. Those directives were irreconcilable. Here, by contrast, the statute refers to the number of challenges in

capital cases, but does not define "capital case." Thus, Crim. P. 24(d)(1), which does define the term, can be given effect without producing a result irreconcilable with the plain language of the statute.

Absent any authority demonstrating that the General Assembly intended the term "capital case" to exclude class one felonies that do not provide for the death penalty, we conclude that the definition in Crim. P. 24(d)(1) must be given effect. While the General Assembly may well decide that § 16–10–104 should be limited to cases in which the death penalty is available, we note that it has not chosen to do so during the twenty-three years since Crim. P. 24(d)(1) was promulgated—even though at least one published case has recognized that the rule affords greater protection to "those charged with class 1 felonies." *People v. Turley, supra*, 18 P.3d at 805.

■ Finally, we note that the People do not suggest that the issue presented here is subject to a harmless error analysis. We similarly conclude that, under the authorities discussed above, failure to allow a defendant the full number of peremptory challenges afforded under state law requires reversal.

### III.

Because we are reversing the judgment and remanding for a new trial, we briefly address only those additional issues raised by defendant that are likely to recur on remand.

### A.

Defendant contends the trial court improperly instructed the jury as to the elements required for theft, as set forth in the burglary instruction, because it omitted the culpable mental state of "knowingly" from the "without authorization" element of theft.

The instruction given here set forth the elements of theft in the same format as the instructions challenged in *Auman v. People*, 109 P.3d 647 (Colo.2005), and *People v. Bornman*, 953 P.2d 952 (Colo.App.1997). In both cases, the instructions were held to be erroneous because they did not require the jury to find that the defendant was aware of his or her lack of authority over the property at issue.

We need not decide whether the same instruction would have required reversal under the facts of this case. However, on remand, any instruction setting forth the elements of theft should apply the "knowingly" portion of the instruction to the "without authorization" requirement, as set forth in *Auman* and *Bornman*.

### B.

Defendant also contends that the trial court's admission of certain hearsay statements, made to police officers by other occupants of the house shortly after the incident, violated his federal and state constitutional right to confront witnesses.

■ Again, we need not decide whether admission of the statements would, without more, have required reversal. However, on remand, if the prosecution seeks to admit hearsay statements to which defendant objects, the trial court must first determine, based on the specific circumstances surrounding the giving of the statements, whether the statements are testimonial within the meaning of *Davis v. Washington,* —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), and *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). If they are, the Confrontation Clause precludes admission of the statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *See Crawford v. Washington, supra; People v. Vigil,* 127 P.3d 916 (Colo.2006).

■ If the statements are not testimonial, their admission does not implicate the Confrontation Clause. However, they are nevertheless inadmissible under the state constitution unless the prosecution shows that the declarant is unavailable and the statement bears sufficient indicia of reliability under the test set forth in *People v. Dement,* 661 P.2d 675 (Colo.1983), *abrogated in part on other grounds by People v. Fry,* 92 P.3d 970 (Colo. 2004). *See People v. Vigil, supra.*

The judgment of conviction is reversed, and the case is remanded for a new trial.

Judge MÁRQUEZ concurs.

Judge RUSSEL specially concurs.

Judge RUSSEL specially concurring.

I concur in the judgment and endorse parts I and III of the majority's opinion. I write separately to advance an alternative analysis for part II.

The majority holds that Crim. P. 24(d) does not conflict with § 16–10–104, C.R.S. 2005, because the rule "can be given effect without producing a result irreconcilable with the plain language of the statute." I think there is a conflict: under the rule, defendant was entitled to sixteen peremptory challenges; under the plain language of the statute, he was entitled to nine challenges. Defendant's case plainly falls within the class described in the statute as "all other cases, where the punishment may be by imprisonment in the correctional facilities operated by the department of corrections." Section 16–10–104(1), C.R.S.2005.

When a statute and a rule conflict, Colorado courts identify the prevailing law by determining whether the matter is substantive or procedural: if it is substantive, the statute prevails over the rule; if it is procedural, the rule controls. *People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (1978).

A division of this court has held that § 16–10–104 prevails over a conflicting version of Crim. P. 24(d) because the number of peremptory challenges is a substantive matter. *People v. Hollis*, 670 P.2d 441 (Colo.App. 1983). I disagree with this conclusion and would resolve this case on the ground that Crim. P. 24(d) controls.

I acknowledge that the right to peremptory challenges is substantive. (Thus, if the legislature were to disallow peremptory challenges entirely, the supreme court would lack authority to promulgate a conflicting rule.) But the application of this substantive right is subject to the supreme court's power to "make and promulgate rules governing practice and procedure in civil and criminal cases." Colo. Const. art. VI, § 21.

I think that the number of peremptory challenges is a matter of procedure. And I note that courts in other states have ex-

pressed the same view. *See People v. Oswald*, 188 Mich.App. 1, 469 N.W.2d 306, 309–10 (1991); *State v. Greer*, 39 Ohio St.3d 236, 530 N.E.2d 382, 395–96 (1988); *State v. Nelson*, 18 Wash.App. 161, 566 P.2d 984, 986 (1977).

Because defendant did not receive the number of peremptory challenges required under Crim. P. 24(d), the judgment of conviction must be reversed.